UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-3596** |
| **LEON A. CANNIZZARO, JR., ET AL.** | **SECTION: "R"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, James Thomas, a state prisoner, filed this *pro se* complaint against Orleans Parish District Attorney Leon A. Cannizzaro, Jr., and Arthur A. Morrell, the Clerk of the Orleans Parish Criminal District Court. In this lawsuit, plaintiff claims that "[t]he action and inaction by the defendants has cause[d] plaintiff to be illegally held in the Louisiana Department of Public Safety and Correction[s] being punish[ed] to serve hard labor without a sentence ...."[1] As relief, plaintiff seeks an award of $5,000,000 in damages and an order that he be transferred from the Louisiana State Penitentiary to the Orleans Parish Prison system.

### I. Facts

In its decision on plaintiff's direct criminal appeal, the Louisiana Fourth Circuit Court of Appeal recounted the procedural history of plaintiff's criminal proceedings:

---

[1] Rec. Doc. 3, p. 6.

>   Thomas was indicted by the grand jury and charged with the aggravated rape of G.T., a violation of La. R.S. 14:64.1. Following a trial on October 15, 1985, a twelve-member jury found him guilty of one count of first-degree robbery and one count of aggravated rape. On October 22, 1985, the trial court sentenced him to forty years on the first-degree robbery count without benefit of probation, parole or suspension of sentence and to life imprisonment without benefit of probation, parole or suspension of sentence on the aggravated rape count. The trial court also ordered that both sentences be served consecutively to each other. The State then filed a multiple bill of information, which alleged that Thomas was a second-felony offender. The court vacated the original sentence and re-sentenced Thomas under La. R.S. 15:529.1 to the same number of years previously imposed. The trial court again ordered the sentences to run consecutively.

State v. Thomas, No. 99-KA-0287, at pp. 1-2 (La. App. 4th Cir. Mar. 15, 2000) (footnote omitted) (unpublished).[2] Although the Court of Appeal affirmed plaintiff's convictions, it vacated his habitual offender adjudication and sentences. The Court of Appeal explained:

> Thomas argues that he is entitled to a new multiple bill and sentencing hearing because a transcript of the proceeding was not properly preserved.
>     ....
>     The record, which was lodged in this Court in February 1999, contains the transcript of the October 15, 1985 trial. The record also contains a certification from a court reporter certifying that a diligent search of the records in storage has been made, and the notes and/or audiotapes from the October 22, 1985 multiple bill and sentencing hearing could not be found. Thus a transcript of the October 22, 1985 multiple bill and sentencing hearing could not be reviewed.
>     Thomas' counsel argues that she cannot review the legality of the multiple bill adjudication and the propriety of the sentences because the transcript of the proceedings was not available. This argument does have merit.
>     In State v. Ford, 338 So.2d 107, 110 (La. 1976), the Supreme Court held that a defendant should be afforded a new, fully-recorded trial where his appellate counsel was not counsel at trial and the court reporter could not provide a transcript of the testimony at trial. In State v. Murphy, 613 So.2d 778 (La. App. 4 Cir. 1993), this Court reversed a sentence and remanded the matter for a new multiple bill hearing where the multiple bill hearing and sentencing transcripts were deemed unavailable.

---

[2] A copy of that appellate decision is attached to plaintiff's federal complaint.

> In light of the fact that Thomas is serving a life sentence and a consecutive sentence of forty years, we must remand this matter to the trial court for a new multiple bill hearing and re-sentencing.

Thomas, No. 99-KA-0287, at pp. 8-10. Therefore, the Court ordered: "Thomas' conviction and sentence as a habitual offender are vacated and the case is remanded for a new sentencing hearing." Id. at 10.

Because plaintiff contends in this lawsuit that the state district court never held a new multiple offender hearing, the undersigned ordered the Orleans Parish District Attorney to produce the post-remand court records. Those records include a certified copy of a minute entry dated March 27, 2001, which shows that the state withdrew the multiple bill of information against plaintiff on that date; however, the minute entry does not indicate that the original sentences were reinstated.[3] The records further reflect that in May 2009, plaintiff filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ asking that his prosecution be quashed and that he be released from custody. On June 30, 2009, the Court of Appeal transferred that application to the district court for consideration.[4] Orleans Parish Assistance District Attorney Graham Bosworth has advised this Court that a new sentencing hearing was set in the case for August 10, 2009;[5] however, the result of that hearing is unknown.

---

[3] Rec. Doc. 16, minute entry dated March 27, 2001.

[4] Rec. Doc. 16; State v. Thomas, No. 2009-K-0692 (La. App. 4th Cir. June 30, 2009).

[5] Rec. Doc. 16, p. 3.

## II. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those

claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[6] the Court nevertheless finds that the complaint should be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

### III. Monetary Damages

Plaintiff seeks $5,000,000 in damages. For the following reasons, plaintiff is not entitled to an award of monetary damages against either Leon A. Cannizzaro, Jr., or Arthur A. Morrell.

---

[6] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

A. Leon A. Cannizzaro, Jr.

Leon A. Cannizzaro, Jr., has played two roles in this case. While serving on the Orleans Parish Criminal District Court, Cannizzarro was the judge who presided over plaintiff's criminal trial and sentencing. By virtue of his subsequent election as Orleans Parish District Attorney, Cannizzaro is also involved in this case in that capacity. It is unclear whether plaintiff is naming Cannizzaro in his role as judge, district attorney, or both, and whether he is being sued in his individual capacity, official capacity, or both. Nevertheless, in any event, it is clear that any request for monetary damages against Cannizzaro fails.

1. Claims Against Cannizzaro in His Role as Judge

To the extent that Cannizzaro is sued as a judge in his individual capacity, he is protected by absolute judicial immunity. It has long been held that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351 (1871); see also Brandley v. Keeshan, 64 F.3d 196, 200 (5th Cir. 1995) (absolute immunity applies even where judge's "exercise of authority is flawed by grave procedural errors" or where the judge "took action maliciously or was in excess of his authority"); Harper v. Merckle, 638 F.2d 848, 856 n.9 (5th Cir. 1981) ("[W]e can envision no situation – where a judge acts after he is approached *qua* judge by parties to a case – that could possibly spawn a successful § 1983 suit."). The United States Supreme Court has explained: "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice, the

existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." Mireles v. Waco, 502 U.S. 9, 11 (1991). Further, judicial immunity is clearly applicable in federal civil rights cases. Stump v. Steward, 435 U.S. 349, 356 (1978); Pierson v. Ray, 386 U.S. 547, 554-55 (1967).

The Supreme Court has recognized only two instances in which judicial immunity is inapplicable:

> [O]ur cases make clear that the immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

Mireles, 502 U.S. at 11-12 (citations omitted). Neither of those exceptions applies in this case.

Regarding the first exception, the Supreme Court has explained:

> The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity.

Stump, 435 U.S. at 362. The act at issue here, presiding over plaintiff's state criminal proceedings, obviously involved a function normally performed by a judge. Further, plaintiff was clearly dealing with the former Judge Cannizzaro in his judicial capacity.

Regarding the second exception, there is no question that Cannizzaro had jurisdiction over plaintiff's criminal proceedings in the Orleans Parish Criminal District Court.

Accordingly, for the foregoing reasons, an individual-capacity claim arising from Cannizzaro's involvement in this case as a judge is barred by his absolute judicial immunity.

To the extent that plaintiff is suing former Judge Cannizzaro in his official capacity, that claim likewise fails for two reasons.

First, a state official in his official capacity is not a "person" amenable to suit for damages under 42 U.S.C. § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997).

Second, a judgment against former Judge Cannizzaro in his official capacity would be satisfied out of the state treasury. La.Rev.Stat.Ann. § 13:5108.1. Because an official-capacity claim against him is therefore in reality a claim against the state itself, any such claim is barred by the Eleventh Amendment. Voisin's Oyster House, Inc. v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986); Doris v. Van Davis, Civ. Action No. 08-4138, 2009 WL 382653, at *2 (E.D. La. Feb. 12, 2009); see also Wallace v. Texas Tech University, 80 F.3d 1042, 1047 n.3 (5th Cir. 1996) ("Suits against state officials in their official capacity are considered to be suits against the individual office, and so are generally barred as suits against the state itself.").[7]

---

[7] The Eleventh Amendment bars a state's citizens from filing suit against the state in federal court unless the state has waived its immunity. Cozzo v. Tangipahoa Parish Council-President Government, 279 F.3d 273, 280 (5th Cir. 2002). The United States Fifth Circuit Court of Appeals has noted:

> By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal court. See La.Rev.Stat.Ann. § 13:5106(A).
> Furthermore, Congress may only abrogate a state's Eleventh Amendment immunity by unequivocally expressing its intent to do so and by acting pursuant to a valid exercise of power. We note that in enacting § 1983, Congress did not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States.

Id. at 281 (quotation marks and citations omitted).

### 2. Claims Against Cannizzaro in his Role as District Attorney

Cannizzaro is now involved in plaintiff's criminal proceeding as the district attorney. To the extent that plaintiff is bringing claims against Cannizzaro in that role, those claims should likewise be dismissed.

As to a claim against Cannizzaro in his individual capacity, that claim is barred by absolute prosecutorial immunity. Prosecutorial immunity protects Cannizzaro against claims based on his "actions in initiating the prosecution and in carrying the case through the judicial process." Boyd v. Biggers, 31 F.3d 279, 285 (5th Cir. 1994). A prosecutor's absolute immunity also extends to "actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993) (quotation marks omitted). Further, "[a]bsolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently." Rykers v. Alford, 832 F.2d 895, 897 (5th Cir. 1987) (quotation marks omitted).

To the extent that plaintiff may have intended to name Cannizzaro in his official capacity, that claim likewise fails. The United States Fifth Circuit Court of Appeals has noted:

> For purposes of "official capacity" suits under § 1983, the district attorney's office resembles other local government entities. Therefore, we advert to the Supreme Court's development of principles for determining whether a municipality or other local government entity should be held liable under 42 U.S.C. § 1983 for the constitutional tort of its employee.

Burge v. Parish of St. Tammany, 187 F.3d 452, 470 (5th Cir. 1999). The Fifth Circuit has further held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the

>custom or policy served as a moving force behind the constitutional violation at issue
>or that [his] injuries resulted from the execution of an official copy or custom.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003). In the instant case, plaintiff does not even allege that the purported violation here stemmed from an official policy or custom, much less identify such a policy or custom.

### B. Arthur A. Morrell

Plaintiff also seeks monetary damages from Arthur A. Morrell, the Clerk of the Orleans Parish Criminal District Court. The claims against Morrell also fail.

Plaintiff clearly has not stated an individual-capacity claim against Morrell. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes *no allegations whatsoever* against Morrell or any involvement by him in the events on which plaintiff's claims are based. Without such allegations, no individual-capacity claim has been stated against Morrell. Although Morrell holds a supervisory position, that fact alone is

insufficient to render him liable for federal civil rights violations allegedly committed by his subordinates under any theory of strict liability[8] or vicarious liability.[9]

It is likewise clear that plaintiff has not stated an official-capacity claim against Morrell. Again, plaintiff does not allege that the purported violation claimed here resulted from a policy or custom, much less identify such a policy or custom. Therefore, for the reasons previously explained, no official-capacity claim has been stated.

## IV. Transfer

This Court notes that plaintiff also requests as relief an order that he be transferred from the Louisiana State Penitentiary to the Orleans Parish Prison system. That request must be denied for several reasons.

First, plaintiff has no federal constitutional right to be housed in the Orleans Parish Prison system. He has been convicted of first-degree robbery and aggravated rape, and his convictions were affirmed and are no longer subject to direct review. Louisiana law mandates punishment at hard labor for both of those convictions, and the conviction for aggravated rape carries a mandatory life sentence without benefit of probation, parole or suspension of sentence. La.Rev.Stat.Ann. §§ 14: 42(D) and 64.1(B). Although the precise status of plaintiff's resentencing is unclear, he is, at

---

[8] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[9] An official cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

11

most, awaiting nothing more than resentencing. This Court is unaware of any authority supporting plaintiff's underlying contention that a prisoner such as himself, who has an outstanding final conviction carrying a mandatory unenhanced sentence of life imprisonment at hard labor, has a federal constitutional right to be transferred to a parish jail pending resentencing if his original sentence was vacated on appeal due to a technical defect in the related habitual offender proceeding.

Second, placement of state prisoners is a matter left to the discretion of state officials, and prisoners have no federal constitutional right to be housed in any particular facility or to be transferred from one prison facility to another, even if life in one prison may be much more disagreeable than in another. Olim v. Wakinekona, 461 U.S. 238, 245-46 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000); Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989).

Third, even if he could somehow overcome the foregoing obstacles, plaintiff has not named a proper defendant with respect to this request. Plaintiff is not in the custody of either of the two defendants named in this lawsuit, District Attorney Cannizzaro or Clerk of Court Morrell. Accordingly, even if the Court had the authority to order a transfer, no such order could be enforced against the defendants because they have no ability to effect such a transfer.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's claims against Leon A. Cannizzaro, Jr., and Arthur A. Morrell be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this seventeenth day of August, 2009.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**